## Foreman v. Weil.

(Decided March 13, 1917.)

### Appeal from McCracken Circuit Court.

Appeal and Error—Finding of Chancellor.—Evidence reviewed and chancellor's finding, that contract of accord and satisfaction

relied upon by appellant in avoidance of his liability as indorser upon certain negotiable instruments, held to be palpably against the evidence.

W. MIKE OLIVER, JOSEPH R. GROGAN and JOHN K. HENDRICK for appellant.

WHEELER & HUGHES and BERRY & GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Prior to February 12th, 1909, appellant, Foreman, and appellee, Weil, were stockholders in the Foreman Brothers Electric Company, a corporation engaged principally in the sale and repair of automobiles, at Paducah, Kentucky; Weil owning one hundred shares, or one-half of the capital stock of the corporation, and Foreman owning, or controlling, the other half. Upon that day, by a pencil memorandum contract, Weil retired from the corporation, selling his stock to Foreman, and R. O. Gresham acquired half of the capital stock of the corporation by a separate contract, from Foreman, and the corporation was thereafter conducted by Gresham and Foreman, each owning a half of the capital stock thereof. For Weil's half interest in the business Foreman agreed to pay him four thousand dollars and to assume the indebtedness then outstanding against the company, amounting to something more than $20,000.00, and evidenced by numerous notes executed by the corporation, upon which Weil and Foreman, with another, were indorsers. This memorandum contract provided that, on or before February 15th, 1909, a contract, covering, in detail, the terms of the sale, should be executed by the parties, which contract, bearing date February 19th, 1909, is in part as follows:

"A contract made and entered into on this the 19th day of February, 1909, by and between Jesse Weil, of Paducah, Kentucky, party of the first part, and Foreman Bros. Electric Company, hereinafter called the "company," a corporation existing under the laws of the state of Kentucky, and doing business in the city of Paducah, Kentucky, and S. E. Foreman, of the same city and state, parties of the second part:

"Whereas the said Weil and Foreman are the owners of one hundred (100) shares of the capital stock of the Foreman Bros. Electric Company, including three (3) shares of stock issued to and held in the name of

Earl W. Foreman and so issued for the purpose of providing the necessary number of stockholders to constitute a board of directors, but in fact owned by S. E. Foreman; and,

"Whereas it is the desire of S. E. Foreman to acquire the stock of the party of the first part and to secure and indemnify the party of the first part against loss by reason of his suretyship and liability as endorser or otherwise on various obligations of the said Foreman Bros. Electric Company.

"Now, therefore, in order to carry out the desires of the parties hereto in effecting such transfer of said stock from the party of the first part to the said S. E. Foreman and in securing and holding harmless against loss the party of the first part on account of his liability on the obligations of the Foreman Bros. Electric Company the parties hereto have and do by these presents agree as follows, to-wit:

"1. The party of the first part agrees to sell to S. E. Foreman his one hundred (100) shares of stock in Foreman Bros. Electric Company each of the par value of $100.00 for the agreed sum of $4,000.00 to be evidenced by the promissory note of the said S. E. Foreman with Roy O. Gresham as surety thereon. . . . .

"V. The company agrees to and does hereby assume payment of all existing indebtedness of the company of every kind and description whatsoever and agrees and covenants with the party of the first part to hold him harmless from the payment of any obligations of the company either presently existing or contingent and which may hereafter arise. . . . .

"X. The foregoing agreements and stipulations between the parties are all to be construed and held as mutual agreements and considerations passing between the parties, of equal import and consequence in the making of the contract between the parties; and,

"S. E. Foreman and Foreman Bros. Electric Company are to be deemed and held as one and the same party in the making of this contract whereby the said S. E. Foreman becomes the proprietor and owner of all the stock of the Foreman Bros. Electric Company and the considerations moving to and from him under the terms of this agreement are to be deemed and held in like manner considerations moving to and from said company.

"This contract is executed in duplicate on the day and year first above mentioned, one copy of which is retained by the party of the first part and one by the company.

"In testimony whereof witness the signatures of the party of the first part and of S. E. Foreman in his own right and of Foreman Bros. Electric Company by S. E. Foreman, its president, thereunto duly authorized.

> "JESSE WEIL,
> "S. E. FOREMAN,
> Foreman Bros. Electric Co.,
> "By S. E. FOREMAN, Pres."

In compliance with this contract, Foreman and Gresham executed to Weil, their note for $4,000.00, attaching to the note, as collateral security therefor, all of the capital stock of the corporation, and Foreman's share of stock in the Big Ten Improvement Company; and, on February 23rd, 1909, Foreman executed the mortgage to Weil, upon his real estate, as the contract provided, and, on March the 4th, 1909, the corporation executed to Weil, a mortgage upon all of its property, to indemnify him as indorser upon the company's obligations.

On the 24th day of August, 1909, pursuant to some kind of arrangement between Weil, Foreman and Gresham, the affairs of the corporation were taken into the bankruptcy court, by three of its creditors procured by Weil, the directors of the corporation having adopted a resolution acknowledging the corporation's inability to pay its obligations, which was done at the suggestion of the attorney who was representing the petitioning creditors, as a necessary pre-requisite to the bankruptcy proceedings. As a result of the bankruptcy proceedings, Weil secured, at bankruptcy sales, all of the assets of the corporation. The company's creditors received upon their claims, a little more than ten per cent.; and the company procured a discharge.

On the 14th day of August, 1914, Weil filed these two actions against Foreman, one in equity, and the other at common law. In the equitable action he alleged, that, as indorser for the Foreman Bros. Electric Company, he had paid at maturity, negotiable notes, upon which Foreman and Jeneatte Weil were also indorsers, and asked judgment against Foreman for the several amounts that Foreman, as indorser upon said obliga-

tions, was liable to contribute upon said indebtedness, aggregating $5,129.99.

In the ordinary action, Weil asked judgment against Foreman, as indorser, upon several notes executed to him by the Foreman Brothers Electric Company, aggregating $7,147.81.

In his separate answers to these petitions, Foreman alleged, that, on August 23rd, 1909, the day before the filing of the bankruptcy petition, Weil agreed with him and Gresham, that, if they would consent to the bankruptcy proceedings, and not bid for any of the company's property when sold at bankruptcy sale, and Foreman would convey to Weil his real estate and his share of stock in the Big Ten Improvement Company, Weil would satisfy the company's obligations and release Foreman and Gresham of all liability thereon, as well as upon their note to him for four thousand dollars, executed to him for his stock in the corporation.

The two actions were then consolidated, the issues completed, and depositions taken. Upon submission, the chancellor rendered judgment in favor of Weil, against Foreman, for $8,027.80, having credited the $12,277.80 claimed by Weil with $4,250.00, the amount of a note representing Weil's individual indebtedness that the evidence showed had been paid out of the assets of the company.

From that judgment Foreman is appealing, relying upon several grounds for a reversal, one of which is, that the judgment is flagrantly against the evidence, and, in view of our conclusions upon this proposition, it is not necessary for us to consider the other errors assigned.

In support of the alleged agreement of accord and satisfaction, of August 23rd, 1909, Foreman introduced himself, R. O. Gresham, T. H. Callahan, A. D. Teer, C. B. George and J. H. Cody; and in contradiction of their evidence, Weil presented the testimony of himself and W. F. Bradshaw.

Foreman testified that the agreement was executed as set out in his answer; that he fully complied with the terms thereof, and that Weil had frequently promised him, since that time, to turn over his notes to him as soon as he got possession of them.

Gresham testified that, upon his return from Indianapolis to Paducah, Foreman told him of the agreement

with Weil, made in his absence, but subject to his approval; that he consented thereto and assisted in carrying it out; that in but a few days thereafter, Weil, in a conversation with him, corroborated Foreman's statement of the contract, and agreed to release them and turn over the notes to them when they came into his possession.

E. J. Beale testified that, a short time after the filing of the bankruptcy proceedings, he was in the place of business of the Foreman Brothers Electric Company, and heard a conversation between Foreman, Weil and Gresham, in which Foreman and Gresham were insisting upon delivery by Weil of some notes; that Weil said it wasn't necessary; that he released them on all notes and accounts they were bound for, and that their notes and accounts were null and void; that Mr. Weil seemed to say that, if they turned over everything to him, he would release them on everything, or something to that effect.

G. B. George, T. H. Callahan and A. D. Teer testified that, in June, 1910, they heard a conversation between Weil and Foreman, in which Weil asked Foreman if he was ready to give him that deed, and Foreman said: "Yes, I am willing to give you the deed, provided you will give me those notes as agreed," and that Weil said that the notes were tied up, and "as soon as I get them released I will turn them over."

J. H. Cody testified that, as sales manager of the Overland Automobile Company, within a short time after the beginning of the bankruptcy proceedings against the Foreman Brothers Electric Company, which was agent for his company in Paducah, he went to Paducah, to try to adjust a controversy growing out of the contract with the Foreman Brothers Electric Company for the sale of the Overland automobiles; that Mr. Weil claimed the right to the contract, and Foreman and Gresham wanted to handle the Overland; "Mr. Weil stated to me that he had made a proposition to Foreman & Gresham before the company went into bankruptcy to take the business of the Foreman Brothers *Electrical* Co. over and he was to assume all their liabilities growing out of the company, and, as I understood it, took over the property owned by the company, contracts of agency for sales of automobiles, and the good will of the business, and he was entitled under the contract he had made with Foreman and Gresham to have the bene-

fit of the contract previously made by the company with
my company for the sale of the Overland cars. He
threatened to make trouble for my company if I did
not adjust matters so that he would have the agency for
the Overland cars. Mr. Foreman and Mr. Gresham
then admitted to me that they had agreed to turn every-
thing connected with the company over to Mr. Weil on
condition that Mr. Weil should relieve them personally
of all debts of the concern, and upon this admission Weil
claimed the right to the agency contract. Q. 11. What
led to or brought up this conversation; explain fully?
It was brought up by Mr. Weil in his attempt to con-
vince me that he was entitled to the continuation of
the agency contract for the Overland automobiles in
that territory. He said that he had bought the agency
contract in his deal with Mr. Foreman and Mr. Gresham,
when he assumed the payment of their part of the com-
pany's debts, and that they turned the same over to him
with the business and I took the position that when the
company went into bankruptcy the agency contract be-
tween Foreman Bros. *Electrical* Co. and my company
was null and void and he claimed that he was entitled
to it under his contract with these other two gentlemen.
Consequently I referred this to the executive depart-
ment of the Overland Company in Indianapolis, Ind-
iana.''

Mr. Weil denied *in toto* the agreement to release
Foreman and Gresham, and denied the conversations
about which the witnesses for Foreman testified.

Mr. Bradshaw testified that, upon several occasions
before the filing of these actions, and after the discharge
in bankruptcy, Foreman had admitted to him an indebt-
edness to Weil, growing out of the Foreman Brothers
Electric Company transaction, and had expressed his
intention of paying Weil as soon as he got able to do so.
Foreman denies these conversations with Bradshaw, ex-
cept that he admits that, a short time before these suits
were filed, and after he knew that Weil was asserting
these claims against him and threatening to sue thereon,
in an effort to compromise and avoid litigation, he had
offered, in the presence of Bradshaw, to pay Weil not
to exceed a thousand dollars.

Not only do we think that the great weight of this
testimony supports Foreman's contention, but there are
several circumstances that confirm us in that conclusion.

On the 4th day of June, 1910, Foreman executed to Weil a general warranty deed for his real estate, which, so far as this record shows, was all the property he owned, and the consideration stated in that deed is, one dollar cash in hand paid "and other good and valuable considerations." Foreman testifies that this deed was executed in compliance with his agreement with Weil, of August 23rd, 1909, and that the other good and valuable considerations referred to in the deed were, his release by Weil upon the company's obligations.

Mr. Weil testifies that, at the time the deed was executed, he and Foreman were unfriendly, and that the deed was executed by Foreman in partial satisfaction of the note and mortgage for four thousand dollars which Foreman and Gresham had executed to him in the purchase of his stock in the corporation; that the property was conveyed to him upon the agreement that he would sell same, and credit the note with the proceeds of the sale thereof; that the credits had not yet been made because all of the property had not been sold; that he could not know until the sales were had, what credit should be given upon the note.

In view of the fact that Weil says that he and Foreman were, at the time, unfriendly, it does not seem reasonable that Foreman would have been willing to part with all the property he owned, under such conditions. Mr. Bradshaw contradicts Weil with reference to this transaction, testifying that the consideration for the deed was, the satisfaction of all liability of Foreman upon the four thousand dollar loan, while both Mr. Weil and Mr. Bradshaw are contradicted by the evidence of Foreman, George, Callahan and Teer, as to this particular transaction.

It is also in the evidence, that, after these suits were filed, Weil and Gresham had a conversation, in Chicago, about the release of Gresham upon these obligations, and while they did not agree as to what was said in that conversation, they do agree that Gresham was to prepare and forward to Weil, at Paducah, a release that was to be executed by Weil, provided Foreman would agree thereto. Weil introduces the letter that Gresham wrote to him enclosing this release, the letter beginning: "I am enclosing herewith a little form of a release which I have drawn up, which is in accordance with your promise to me at the Chicago show."

The enclosed release which Weil was asked to sign is as follows:

"Mr. Roy Gresham,
          Des Moines, Ia.

"Dear Sir:—I desire to say that I am willing and do now, as originally agreed, release you from any and all obligations or liabilities to me or to anyone else on all notes and obligations of the Foreman Bros. Electric Company and on any obligations or contracts growing out of that business or your connection with it. But this agreement is not to be binding on me unless you obtain the written agreement of S. E. Foreman that it shall not release or relinquish my claims against him on which I have suits proceeding against him in McCracken county, Kentucky.

"March ............., 1915."

It will be noticed that the letter says, that the release enclosed is in accordance with their agreement, and that the release states, that Weil is to release Gresham "as originally agreed." While Weil did not execute this release, the fact that Gresham, while trying to procure a release for himself, prepared the release as he did, and sent it to Weil, it seems to us, is a circumstance that corroborates Gresham's testimony, and contradicts that of Weil, for, why should Gresham have put in the release the words "as originally agreed," unless there had been such an original agreement? And, too, after Weil had notice that Foreman was going to take the deposition of Gresham in Des Moines, Iowa, he telephoned Gresham and tried to arrange for a meeting before he gave his deposition.

Then, again, although Weil attempts in this action to hold Foreman as an indorser, and not as a maker, of the notes sued upon, he did not, when these notes became due, give any notice to Foreman, of non-payment by the maker, but now claims a waiver of notice of dishonor, by the agreement of February 19th, 1909. That he did not, at the time these obligations became due and he paid such of them as were due to others than himself, expect to hold Foreman as an indorser, seems to be made clear by his failure to give notice of dishonor, for only by so doing could he render Foreman liable as an indorser—section 3720b, subsection 89, Kentucky Statutes—of which fact he must be presumed to have known; but even stranger than this, is the fact that, when pre-

sented with the difficulty of recovery against Foreman, as an indorser, without notice of dishonor, he should seek to rely upon the contract of February 19th, 1909, as a waiver of notice. The contract of February 19th, 1909, if a valid and subsisting contract between the parties at the time of the non-payment of these notes, as will appear from the portions thereof copied herein, made Foreman liable, not as an indorser for contribution to his co-indorsers, but made him primarily liable for the full amount of these obligations; and yet Weil, in these actions, is not attempting to enforce that contract, but is relying only upon the liability of Foreman as an indorser upon the notes. This fact, to our minds, proves conclusively that, when Weil filed these actions and proceeded against Foreman only for contribution as an indorser, he recognized that the contract of February 19th, 1909, was not then binding upon Foreman; and if it was not then binding, what was it that had destroyed its force? The only thing that could have done so, even suggested by the evidence, is the contract of accord and satisfaction, of August 23rd, 1909, relied upon by Foreman. Upon no other theory is the conduct of Weil explainable, and it is entirely unreasonable to presume that Foreman would have voluntarily given up to Weil, as he did, everything in the world that he owned, for no consideration whatever, except for such credit upon his obligations as Weil might derive from a sale, at whatever price he might elect to take therefor, and without consultation with Foreman, especially if, as testified to by Mr. Weil, there was, at the time, a decided unfriendliness between him and Foreman.

We are thoroughly convinced that the findings of the chancellor are palpably against the evidence, and that the great weight of the evidence establishes the contract of August 23rd, 1909, relied upon by Foreman.

Wherefore, the judgment is reversed, with directions to dismiss appellee's petition.